IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| RHONDA RENEE GARLAND, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:21-CV-00746-ALM-CAN |
| | § | |
| v. | § | |
| | § | |
| COMMISSIONER, SSA, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff brings this appeal for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") pursuant to 42 U.S.C. § 405(g), denying her claim for benefits. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the Court recommends that the Commissioner's decision be **AFFIRMED**.

**RELEVANT PROCEDURAL HISTORY**

On July 23, 2019, Plaintiff protectively filed her application for disability income benefits ("DIB") under Title II of the Social Security Act [TR 15, 54]. Plaintiff alleged disability due to "cervical dystonia, anxiety, depression, intractable migraines, trigeminal neurologia [sic], insomnia" [TR 55]. Plaintiff was born on April 16, 1966, making her age classification at the date of alleged onset as that of a "person closely approaching advanced age." *See* 20 C.F.R. §§ 404.1653(d). Plaintiff has a high school education, attended two years of college, and completed nursing school [TR 151]. Her last full-time employment was as a home healthcare coordinator and nurse; the ALJ identified this work as case manager and registered nurse [TR 151].

On September 9, 2019, Plaintiff's application was initially denied [TR 62], and again on reconsideration on January 6, 2020 [TR 75]. A hearing was held on November 9, 2020, at which

Plaintiff and a vocational expert ("VE") testified [TR 28-29]. Plaintiff was represented by counsel at Hearing [TR 28]. On February 3, 2021, Plaintiff's application was denied [TR 12-22]. More specifically, the ALJ made the following sequential evaluation [TR 12-22].[1] The ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2024, and that Plaintiff had not engaged in substantial gainful activity from the alleged onset date, June 13, 2019, [TR 17-18]. The ALJ found Plaintiff had the following severe impairments: "lumbar spine degenerative disc disease; cervical spine degenerative disc disease; migraine headaches/trigeminal neuralgia/cervical dystonia" [TR 18]. The ALJ further found the record reflected the following non-severe impairments: "thyroid nodule, eagle's syndrome status post right styloid excision; essential tremor; depression/anxiety" [TR 18]. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 416.920(d), 416.925 and 416.926) [TR 19]. At step four, the ALJ found:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift and/or carry, push and/or pull up to 20 pounds occasionally, 10 pounds frequently. She can stand/walk for 6 hours in an 8-hour workday. She can sit for 6 hours in an 8-hour workday. She can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. She can frequently balance, stoop, kneel, crouch, and occasionally crawl.

---

[1] Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of her disability claim is not disabled. § 404.1520(b). Second, the claimant is not disabled if her alleged impairment is not severe, without consideration of her residual functional capacity, age, education, or work experience. § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if her impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if she is capable of performing her past work. § 404.1520(e). Finally, a claimant who cannot return to her past work is not disabled if she has the residual functional capacity to engage in work available in the national economy. § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability and at the last step the burden shifts to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[TR 19]. Continuing the step four analysis, the ALJ found Plaintiff was capable of performing her past relevant work as a case manager [TR 21]. Thus, the ALJ found Plaintiff was not under a disability as defined in the Social Security Act, from June 13, 2019, through the date of the decision, February 3, 2021 (20 C.F.R. § 404.1520(g)) [TR 21].

On April 1, 2021, Plaintiff requested review of the ALJ's decision by the Appeals Council [TR 130]. The Appeals Council denied review on August 24, 2021 [TR 1-3]. On September 27, 2021, Plaintiff filed the instant suit [Dkt. 1]. On March 9, 2022, the Administrative Record was received from the Social Security Administration [Dkt. 10]. Plaintiff filed her Brief on April 7, 2022 [Dkt. 12]. The Commissioner filed its Brief on June 6, 2022 [Dkt. 13]. On June 15, 2022, Plaintiff filed her Reply [Dkt. 14].

## STANDARD OF REVIEW

In an appeal under § 405(g), a court "reviews a Commissioner's denial of social security disability benefits 'only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Webster v. Kijakazi*, No. 20-60856, 2021 WL 5563333, at *1 (5th Cir. Nov. 29, 2021) (quoting *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (quotation marks and citation omitted)); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert denied*, 514 U.S. 1120 (1995); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). Substantial evidence "need not be a preponderance." *Webster*, 2021 WL 5563333, at *1 (quoting *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012)). Conflicts in the evidence are resolved by the ALJ; the Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, though it will scrutinize the record to

determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995); *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

Plaintiff raises a single point of error on appeal: the ALJ failed to properly explain his "credibility analysis" depriving this Court of meaningful review [Dkt. 12 at 12].[2] More specifically, Plaintiff avers "the ALJ in this case did not address any specific testimony presented by [Plaintiff] but instead found 'not entirely consistent' her claim that 'she is unable to work due to a number of impairments'" [Dkt. 12 at 5]. Plaintiff contends the ALJ reduced Plaintiff's testimony to a single sentence: "the claimant testified that she is unable to work due to a number of impairments including cervical dystonia, incontinence, tremors, muscle spasms, migraine headaches, and weakness." [Dkt. 12 at 14]; and that this single sentence does not explain which of Plaintiff's symptoms were found consistent or inconsistent, which in turn, precludes judicial review [Dkt. 12 at 14].

---

[2] Effective March 2017, the Social Security Administration issued Social Security Ruling 16-3p, which eliminated the "use of the term 'credibility' from [its] sub-regulatory policy," clarifying "that subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). It instructs ALJs to determine "the extent to which ... symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the [claimant's] record" and simply shifts the focus from a more general analysis of a claimant's truthfulness to an objective comparison of a claimant's statements to the evidence of record. *See Howard v. Berryhill*, No. 3:16-CV-318-BN, 2017 WL 551666, at *6 (N.D. Tex. Feb. 10, 2017). While SSR 16-3p explicitly supersedes SSR 96-7P, "it is evident that the change brought about by SSR 16-3p was mostly semantic." *Id.* at *7 (collecting cases).

REPORT AND RECOMMENDATION − Page 4

Plaintiff testified at Hearing regarding her symptoms and impairments, namely regarding her history of pain, spasms, and tremors, which such testimony the Court sets forth in part below:

| | |
|---|---|
| ALJ: | … It looks like the tremors are a recent development. Can you tell me when that started? |
| Plaintiff: | Well, I've had the hand tremors not bad, it would come and go, and the last three fingers on my left hand used to be tingly and come and go. So, that was since summer of '19. |
| ALJ: | Okay. |
| Plaintiff: | But it has just progressed over time. But if I can keep my arm at my side then my hands are fine but put them out and they start shaking. And it was just the right, now it's the left arm. And the more I try to do the more the more they shake. And the leg, if I bend at all it may start jerking, shaking. I don't know if it's going to keep getting worse or stay the same, but the doctor says that nothing can be done about the tremors. |
| ALJ: | Well, I thought they were still doing a work-up, right? |
| Plaintiff: | (INAUDIBLE). |
| ALJ: | Aren't they still working you up for that to figure out what the cause was? I thought that's what we were just talking about, no? |
| Plaintiff: | Yeah. |
| ALJ: | Okay. [TR 35-36] |

….

| | |
|---|---|
| Atty: | So, Rhonda, there's a number of things listed in your medical record that you're being treated for. So, you stopped working in June of '19 you indicated, at that time what was the thing that was interfering the most with you being able to work? |
| Plaintiff: | Pain and muscle spasms. |
| Atty: | Okay. And the pain and muscle spasms, were they located -- where were they located? |
| Plaintiff: | In my head and neck, and lower back. [TR 37] |

….

| | |
|---|---|
| Atty: | Rhonda, let me interrupt you. I want to ask you about since you stopped working in June of 2019. |
| Plaintiff: | Yes. |
| Atty: | So, since that time have you continued to have head, neck, shoulder pain? |
| Plaintiff: | Yes. |
| Atty: | And was that the pain that was interfering with your ability to work in June the time you quit working? |
| Plaintiff: | I had trouble hearing the last part. Is that the same pain as in January? |

REPORT AND RECOMMENDATION − Page 5

| | |
|---|---|
| Atty: | Right. Is that the problem you've been having since? |
| Plaintiff: | Yeah. |
| Atty: | And you also, the record indicates, have been having migraine headaches as well. Is that true? |
| Plaintiff: | Yeah…[TR 39] |

….

| | |
|---|---|
| Atty: | And do the Botox injections, are those intended to treat both dystonia and the migraine headaches? |
| Plaintiff: | Yes. |
| Atty: | So, when you go in for treatment for the Botox injections, how frequently do you have those first? |
| Plaintiff: | They're only allowed every three months. |
| Atty: | So, immediately after you have them do you get some relief for a period of time? |
| Plaintiff: | Yeah. It takes two to three weeks to get the full effect of the Botox, and then I get anywhere from 30 to 50 percent relief for four to six weeks, and then it wears off and I have to deal with the pain. It's moderate to severe even when I have the Botox, and she keeps doing it different each time trying to get the right muscles and the right amount. And so, yeah, anywhere from 30 to 50 percent relief for half the time, you'd say. And then I can have muscle spasms even then that come and go, I have no control. [TR 40] |

….

| | |
|---|---|
| Atty: | Are you able to manage your housework, like house cleaning? |
| Plaintiff: | No. |
| Atty: | Do you get help with that? |
| Plaintiff: | Yes. Yeah, my daughter helps and my son that lives with me, he helps. He does what he can. And I really need to hire somebody to clean, but I've been putting that off. |
| Atty: | Have you been able to take care of your personal needs, like grooming, bathing, and dressing? |
| Plaintiff: | I have a shower chair and like grab bars on the -- it's a sliding shower door that I hold on to, and I've got |
| Atty: | What causes the need for the shower chair? |
| Plaintiff: | Because I'm afraid I'll fall, I get off balance, I get dizzy, and then I might start having a spasm. And so, for safety I use the shower chair. I can't stand up and be safe and I don't want to fall and have more problems. |
| Atty: | And is that due to balance problems and dizziness? |
| Plaintiff: | Yeah. |
| Atty: | Is that something that developed after the surgery? |
| Plaintiff: | Yeah. I didn't have any problems with my balance or dizziness before the surgery, I did not. [TR 44]. |

REPORT AND RECOMMENDATION − Page 6

Under the Social Security Regulations, the ALJ is required to follow a two-step process for evaluating a claimant's subjective complaints. *See* 20 C.F.R. §§ 404.1429, 416.929; SSR 16-3P, 2017 WL 5180304, at *2-3 (S.S.A. Oct. 25, 2017). First, the ALJ must determine "whether there is an impairment that reasonably produce[s] the symptoms of which the claimant complains." *Guillory v. Saul*, No. 1:19-cv-632, 2021 WL 1600283, at *9 (E.D. Tex. Apr. 23, 2021). "If the [ALJ] finds no impairment, the plaintiff is not disabled." *Id*. If the ALJ identifies an impairment, the ALJ then considers the plaintiff's statements regarding his or her symptoms and the "remaining evidence in the record to determine the strength of the symptoms and how the symptoms affect the [plaintiff's] ability to do basic work." *Id*. The ALJ is to consider the entire record, including medical signs and laboratory findings, and statements by the claimant and his treating or examining sources concerning the alleged symptoms and their effect. SSR 16-3P, 2017 WL 5180304, at *5-7 (S.S.A. Oct. 25, 2017). The ALJ must also consider a non-exclusive list of seven relevant factors in evaluating the intensity, persistence, and limiting effect's of a claimant's symptoms:

1. the claimant's daily activities;

2. the location, duration, frequency, and intensity of pain or other symptoms;

3. factors that precipitate and aggravate symptoms;

4. the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms;

5. treatment, other than medication, for relief of pain or other symptoms;

6. measures other than treatment the claimant uses to relieve pain or other symptoms (e.g., lying flat on his or her back);

7. and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

*Id*. at *7-8. The ALJ's evaluation of subjective complaints is entitled to judicial deference. *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991); *see also Nero v. Comm'r*, 4:21-cv-00377, 2022 WL 4593082, at *11 (E.D. Tex. Sept. 29, 2022) (same); *see also V. v. Comm'r*, No. 4:21-cv-1797, 2022 WL 4450488, at *4 (S.D. Tex. Sept. 23, 2022) (same). The ALJ is in the best position to assess a claimant's credibility because she "enjoys the benefit of perceiving first-hand the claimant at the hearing." *See Falco v. Shalala*, 27 F.3d 160, 164 n.18 (5th Cir. 1994); *see also Lara v. Kijakazi*, No. 3:21-cv-1032, 2022 WL 4486085, at *18 (N.D. Tex. Aug. 29, 2022) (same), *report and recommendation adopted*, No. 3:21-cv-1032, 2022 WL 4485826 (N.D. Tex. Sept. 27, 2022).

The ALJ's Decision contains the following discussion related to Plaintiff's subjective complaints, ultimately finding the objective medical findings and history reflect little in the way of the extreme symptoms Plaintiff complained of at Hearing:

> Specifically, regarding the non-severe impairment of essential tremor, in May 2020, **the claimant reported having tremors in her hands that were worsening** with her treatment provider noting the tremor at a telemedicine visit (Exhibit 17F/25, 27, 30). In July 2020, it was noted that the claimant was to get a workup regarding tremors with an MRI (Exhibit 17F/30, 31). The claimant was seen in August 2020 and a tremor was noted. However, MRI was noted to be normal (Exhibit 17F/36). The claimant was treated conservatively with Gabapentin (Exhibit 17F/36). Records also note that the claimant's stance and walking was much different and appeared more normal when she stood up to go to the front desk, whereas she presented with a wide based gait during gait testing. (Ex. 21F/4). The same note reflects that the claimant's tremor was not reproducible during one of the tests. While it is not clear whether a workup for this condition has been completed, the records do not support severe symptoms for a 12 month duration. [TR 18]
> 
> ….
> 
> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

***The claimant testified that she is unable to work due a number of impairments including cervical dystonia, incontinence, tremors, muscle spasms, migraine headaches, and weakness.***

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Regarding neck and back impairments, MRI of the cervical spine showed multilevel chronic degenerative changes with mild bulges at C4-C5 and C5-C6 and C5-C6 left neural exit canal mild impingement (Exhibit 17F/7). MRI of the lumbar spine also showed minimal disc bulges and mild to moderate impingement of the neural exit canal (Exhibit 17F/9). ***The claimant reported having neck, back, and arm pain.*** Physical examinations noted only mildly reduced range of motion of the neck (Exhibit 15F/15). Although examinations showed paraspinal spasm and somewhat flattened lordosis, she had 4/5 motor strength in the lower right extremity, and 5/5 in the lower left extremity (Exhibit 15F). Her gait and ability to ambulate was consistently normal (For example Exhibit 15F, 17F/5, 34, 40, 18F/3, 10, 24, 19F/2, 5, 21F/2, 6, 23F/5, 15, 19, 24). The claimant reported that opioids improved her ability to ambulate, perform household chores, shop, and participate in recreational activities (Exhibit 15F/8, 10, 13, 16, 19).

As noted above, in an October 2020 visit, records document a change in the claimant's gait and stance when she stood up to go to the front desk after testing (Exhibit 21F/4). Further, while the claimant was issued a walker on October 22, 2020, this was done at a telemedicine visit (Exhibit 21F/4, 9, 11). Of note, the prior in-person exam did not result in the prescription of any sort of assistive device. Therefore, the undersigned does not find that the medical necessity for use of a walker is established.

Treatment records seem to indicate similar treatment for migraine headaches, trigeminal neuralgia, and cervical dystonia. ***The claimant was treated with Botox injections which she reported improved her migraines*** (Exhibit 17F/23) and there

>are notations which indicate that her headaches were under control with current treatment (for example Exhibit 17F/29, 36, 41). Treatment records also show a number of months between her Botox injections with the claimant reporting at least 50 percent relief lasting for 6 weeks (Exhibit 17F/27, 17F/38, 21F/2, 9).
>….
>
>The undersigned finds the opinions of that state agency consultants to be generally persuasive regarding the claimant's ability to do a range of light work activity. The consultants supported their opinions with a detailed review of the record, and the consultants are familiar with and understand the Rules and Regulations of the Social Security Administration. However, ***the undersigned has added postural limitation due to the reduced range of motion in the claimant's neck and reports of pain.***

[TR 20-21].

Plaintiff contends this discussion is not sufficiently thorough, and while the ALJ need not regurgitate each of Plaintiff's allegations, the ALJ's recitation must mention more specifics regarding Plaintiff's Hearing testimony. The Commissioner rejoins that the ALJ properly conducted the symptom analysis in accordance with the applicable guidelines, and the evidence provides substantial support for the ALJ's decision [Dkt. 13 at 1]. Following review of the record, the Court agrees with the Commissioner. The ALJ's discussion is sufficient. *See Pearce v. Saul*, No. SA-18-CA, 2020 WL 290017, at *15 (W.D. Tex. Jan. 21, 2020) ("Although the ALJ did not specifically address why he was rejecting Plaintiff's testimony that he would need to alternately sit and stand, his analysis can be determined by his recounting of Plaintiff's activities, medical evaluations, and the fact that past treatment had proved relatively effective); *see also Pigott v. Social Security Admin.*, 21-702, 2022 WL 10719092, at *5 (E.D. La. June 29, 2022), *report and recommendation adopted*, 21-702, 2022 WL 4463641 (E.D. La. Sept. 26, 2022); *see also Jones v. Saul*, No. 3:19-cv-0880, 2020 WL 5752390, at *22-23 (N.D. Tex. Aug. 24, 2020*), report and recommendation adopted*, No. 3;19-cv-0880, 2020 WL 5747873 (N.D. Tex. Sept. 25, 2020).

The ALJ did note specifics from Plaintiff's Hearing testimony, including but not limited to her testimony regarding her reported tremors, pain, and Botox injections, and further discussed the medical evidence which contradicted Plaintiff's subjective complaints. *See Gonzales v. Kijakazi*, SA-20-cv-00498, 2021 WL 3783242, at *6 (W.D. Tex. Aug. 25, 2021) ("Where there are inconsistencies between the claimant's alleged limitations and the evidence as a whole, an ALJ may reasonably discredit the testimony."). By way of example, the ALJ noted Plaintiff's subjective complaints of tremors, but found they were noted in the historical record, and there was no indication Plaintiff "required other than conservative care with negligible effect on the ability to work" [TR. 18].³ *See Byrd v. Comm'r*, No. 3:21-cv-96, 2022 WL 1084995, at *3 (N.D. Miss. Apr. 11, 2022) (citing *Parfait v. Bowen*, 803 F.2d 810, 813-14 (5th Cir. 1986)) ("Evidence that a claimant receives conservative pain treatment substantially supports an ALJ's adverse credibility finding against complaints of incapacity and severe pain."). Consider further, during a "telemed" visit in May 2020, Plaintiff reported a tremor and an MRI was ordered, but the MRI returned normal results [TR 18, 674, 676, 679-80, 685]. The ALJ further noted that Plaintiff's tremors were not reproducible during examination [TR 18]. Thus, in finding her tremors were not severe, the ALJ further discussed Plaintiff's subjective complaints, noting that they were inconsistent with the normal objective test results and use of only conservative treatment, i.e., medication [TR 18]. These are proper factors to consider in assessing Plaintiff's subjective symptom complaints.

The ALJ also discussed Plaintiff's migraine headaches, trigeminal neuralgia, and cervical dystonia, explaining that Plaintiff reported that Botox injections improved her migraines and kept them under control, and that months lapsed in between Plaintiff's injections. *See Stuckey v.*

---

³ Plaintiff faults the ALJ for not consolidating her discussion of Plaintiff's subjective complaints in one location in the Decision and urges the Court to look to only a single sentence later in the analysis as bearing on the issue at hand. The Court has reviewed the totality of the ALJ's Decision in making the instant recommendation.

REPORT AND RECOMMENDATION – Page 11

*Comm'r*, No. 21-200, 2022 WL 10758959, at *11 n. 108 (M.D. La. Sept. 2, 2022) ("Medical impairments that reasonably can be remedied or controlled by medication or treatment are not disabling."), *report and recommendation adopted*, No. 21-200, 2022 WL 4534963 (M.D. La. Sept. 28, 2022). Further buttressing the ALJ's finding that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence is the ALJ's discussion of Plaintiff's gait. The ALJ noted Plaintiff's doctor's finding during an October 7, 2020, evaluation that Plaintiff's stance and walking when she stood to go to the front desk appeared more normal than her "wide based gait during gait testing" [TR 18, 732]. An ALJ properly finds that incomplete effort, inconsistent performance, and exaggerated responses weigh against a claimant's credibility. *See White v. Astrue*, No. 4:08-cv-415, 2009 WL 763064, at *12 (N.D. Tex. Mar. 23, 2009) (upholding ALJ's credibility analysis where "[t]he ALJ addressed White's credibility, but found it eroded by continual findings of symptom magnification."). Moreover, lest it be overlooked, the ALJ did incorporate into the RFC limitations stemming from Plaintiff's subjective complaints regarding her pain [TR 21 ("the undersigned has added postural limitation due to the reduced range of motion in the claimant's neck and reports of pain")].

"[N]either the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Lee v. Comm'r*, No. 4:20-cv-01149, 2021 WL 5042479, at *3 (N.D. Tex. Sept. 20, 2021) (citing *Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. 2005)), *report and recommendation adopted*, No. 4:20-cv-01149, 2021 WL 5040229 (N.D. Tex. Oct. 29, 2021). Indeed, the Fifth Circuit has explicitly rejected the requirement that an ALJ "follow formalistic

rules" when assessing a claimant's subjective complaints. S*ee also Pitts v. Saul*, No. 3:19-cv-1539, 2020 WL 6566412, at *8 (N.D. Tex. Nov. 20, 2020) (quoting *Falco*, 27 F.3d at 163-64). Instead, courts have found a generalized, non-formalistic discussion of the Plaintiff's subjective symptoms and the medical evidence that contradicts those symptoms—like the analysis present here—is sufficient.

Plaintiff argues against this conclusion pointing to an over forty-year old case *Benson v. Schweiker* 652 F.2d 406, 409 (5th Cir. Unit B 1981) in support [Dkt. 14 at 2]. In *Benson*, the Fifth Circuit remanded back to the ALJ after finding there was clear legal error where the ALJ made absolutely no reference to Plaintiff's testimony or any analysis of Plaintiff's subjective symptoms. *Benson* is distinguishable from the present case. As discussed s*upra*, the ALJ made repeated references to the Plaintiff's testimony and contrasted her subjective symptoms with the medical record of evidence at length. The totality of Plaintiff's objective medical record reflects that the ALJ's analysis of Plaintiff's symptoms was tailored to the evidence of record, properly evaluated Plaintiff's alleged symptoms, and accepted the symptom reports to the degree to which they were consistent with the objective medical evidence and other evidence of record. *See Jackson v. Comm'r*, No. 4:20-cv-01149, 2021 WL 5042479, at *4 (N.D. Tex. Sept. 20, 2021), *report and recommendation adopted*, No. 4:20-cv-01149, 2021 WL 5040229 (N.D. Tex. Oct. 29, 2021); *see also Jones*, 2020 WL 5752390, at *17. The ALJ provided a sufficiently thorough evaluation of Plaintiff's subjective complaints.

## CONCLUSION AND RECOMMENDATION

Pursuant to the foregoing, it is recommended the decision of the Commissioner be **AFFIRMED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 14th day of December, 2022.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE